COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-195-CR

WILLIAM MACON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In five points, Appellant William Macon brings a pro se appeal of his conviction for possession of a deadly weapon in a penal institution.  We affirm.

BACKGROUND

On June 20, 2001, Appellant, a former truck driver with a seventh-grade education, was indicted for possession of a deadly weapon in a penal institution.  He chose to represent himself at trial.  The jury trial began on March 7, 2005.

Appellant testified on his own behalf.  He stated, “When you see the videotape you’ll see me holding it [the weapon],” and admitted possessing the weapon to defend himself.
(footnote: 2)  The jury found him guilty of the charged offense and, finding the enhancement paragraphs true, assessed twenty-five years’ confinement as punishment.  The trial court sentenced him accordingly.

DISCUSSION

Appellant’s pro se brief contains five issues, complaining that his indictment was invalid, that the trial court erred by failing to reshuffle the jury after granting his motion for jury shuffle and by denying his motions to suppress and for a speedy trial, and that he received ineffective assistance of counsel.

Ineffective Indictment

In his fourth point, Appellant claims that the trial court lacked jurisdiction because the indictment did not meet the requirements for a valid indictment under the Texas Code of Criminal Procedure or the Texas Constitution. Specifically, he argues that the county and state of the alleged offense were completely omitted.

Article 21.02 of the Texas Code of Criminal Procedure sets forth the requisites of a valid indictment.  
Tex. Code Crim. Proc. Ann. 
art. 21.02 (Vernon 1989).  The indictment must show “that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented.”  
Id.
 art. 21.02(5).  Appellant’s indictment states the following:

The Grand Jury, of 
Wichita County, State of Texas
, duly organized as such at the January Term A.D. 2001, of the 30
th
 District Court for said county, in said court at said term does present that [Appellant], on or about the 24
th
 day of August, A.D. 2000, and before the presentment of this indictment, did 
then and there
, while confined in a penal institution, namely, the Allred Unit, intentionally and knowingly possess and conceal in said penal institution a deadly weapon, to-wit: a piece of metal sharpened to a point on one end with a piece of cloth wrapped around the other end. [Emphasis added.]

With respect to their use in charging instruments, the words “then and there” are words of reference.  
Ex parte Hunter
, 604 S.W.2d 188, 190 (Tex. Crim. App. 1980).  Here, “there” refers back to “Wichita County, State of Texas” in the opening phrase. 
 See id. 
 (stating that such words of reference in the indictment after the county has been named are sufficient to allege that the offense occurred in that county).  Therefore, we hold that the indictment sufficiently alleged the place of the offense and complies with article 21.02(5).  
Id.
  We overrule Appellant’s fourth point.

Jury Shuffle

In his third point, Appellant argues that the trial court erred by failing to reshuffle and redraw the jury list after it granted his motion for a jury shuffle.

Article 35.11 of the code of criminal procedure provides the defendant with a right to a shuffle of the jury panel.  
See 
Tex. Code Crim. Proc. Ann. 
art. 35.11 (Vernon 2006); 
Ex parte Daigle
, 848 S.W.2d 691, 692 (Tex. Crim. App. 1993)
.  But refusal of the trial judge to comply with a jury shuffle request constitutes reversible error only when the request is timely.  
See
 
id
.  The appropriate time for a motion to shuffle the jury is after the jurors have been qualified but before voir dire begins.  
See Velasquez v. State
, 941 S.W.2d 303, 307 (Tex. App.—Corpus Christi 1997, pet. ref’d).  The trial judge has no duty to assert the defendant’s rights for him when the defendant fails to assert them.  
Id
.

In 
Velasquez
, the court granted the appellant’s motion for a jury shuffle approximately five months before the jury was qualified and brought in for voir dire.  
Id
.  In overruling the appellant’s jury shuffle point, the appellate court observed that there was no jury to shuffle when the motion was granted and that the record did not indicate that the appellant had ever attempted to assert his right to the jury shuffle at the appropriate time.  
Id
.

Like 
Velasquez
, here, Appellant filed his motion for jury shuffle long before a jury existed to shuffle, on December 16, 2003.  At the pretrial hearing on February 6, 2004, Appellant moved to shuffle the jury and the court responded, “Okay.  That will be granted.”  However, at trial on March 7, 2005, Appellant did not mention the jury shuffle again until after voir dire had concluded.  Because Appellant failed to assert his right to the jury shuffle at the appropriate time, he waived that right.  We overrule Appellant’s third point.

Motion To Suppress

In his fifth point, Appellant claims that the trial court erred by denying his “motion to suppress the complaint and statements.”  He asserts that if the trial court had granted a hearing outside the jury’s presence, the hearing would have revealed that the officers who testified for the State gave false and conflicting testimony.

Appellant testified at his pretrial hearing that he was not attempting to suppress statements that he had made.  Rather, he wanted to suppress “the statements . . . made by the charging officers—the correctional officers; the witnesses, the State’s witnesses.”  He argued that the statements should be suppressed “because the truthfulness of that information is the basis for this case—and is the basis for the indictment in this case.”

Suppression is used to exclude evidence that has been illegally obtained.  
See Pierce v. State
, 32 S.W.3d 247, 253 (Tex. Crim. App. 2000); 
see also 
Tex. Code Crim. Proc. Ann. 
art. 38.23 (Vernon 2005)
.  Here, testimony was not illegally obtained, nor was that the basis of Appellant’s objection.  Under the Texas Rules of Evidence, all relevant evidence is generally admissible, absent constitutional or statutory provision to the contrary.  
See
 
Tex. R. Evid. 
402.  Because the jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony, that is, whether such testimony is truthful or false, the trial court did not err by denying Appellant’s motion to suppress.  
See Jones v. State
, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  We overrule Appellant’s fifth point. 

Sixth Amendment Claims

In his first point, Appellant argues that the trial court erred by not granting him a new trial based on ineffective assistance of counsel.  In his second point, he asserts that the trial court erred by denying his motion for a speedy trial, thus violating his right to a speedy trial under the Sixth Amendment and under article I, section 10 of the Texas Constitution.

Ineffective Assistance Of Counsel

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005)
.  Ineffective assistance of counsel may result when an attorney labors under a conflict of interest. 
 See Monreal v. State
, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997) (holding defendant failed to prove actual conflict of interest).  A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel’s performance.  
Id
., citing 
Cuyler v. Sullivan
, 446 U.S. 335, 348-350, 100 S. Ct. 1708, 1718-1719 (1980).  An “actual conflict of interest” exists if counsel is required to make a choice between advancing his client’s interest in a fair trial or advancing other interests to the detriment of his client’s interest.  
See James v. State
, 763 S.W.2d 776, 779 (Tex. Crim. App.1989).

Appellant’s ineffective assistance claim centers on the “conflict of interest” language used by the trial court in its August 22, 2005 amended order for court-ordered appellate counsel.  He asserts that the order admits that there was a conflict of interest with the state-provided defense counsel and that this violated his right to effective assistance of counsel.  The order reads as follows:

On the 23rd day of March, 2005, the Court appointed Jim Rasmussen for purposes of representing the defendant on appeal.  The appointment is confirmed.  The Court would clarify by this Order, that Mr. Rasmussen was appointed for the following reasons: 

(1) By hearings of October 10, 2003,
(footnote: 3) and March 8, 2005,
(footnote: 4) it became clear to the Court, and the Court so finds, that this case is being appealed and there is a conflict of interest, specifically including an inability and refusal to work together between the Defendant and 
State Defense Counsel 
that would result in ineffective assistance of counsel; and

(2) The requirements of Article 26.05 have been met, and Wichita County shall pay the first $250.00 of Mr. Rasmussen’s fees and expenses, and the balance shall be paid by the State of Texas. [Emphasis added.]

Appellant filed a pro se motion to dismiss his trial counsel on July 22, 2002, and was represented by his second appointed attorney at the pretrial 
Faretta
 hearing on October 10, 2003.  At that hearing, Appellant requested the right to proceed pro se, stating that he had “been having some problems with 
State Counsel for Defenders 
investigating my case.” [Emphasis added.]  After the court comprehensively admonished Appellant, warning him of the disadvantages of self-representation, Appellant told the court, “I choose to represent myself,” and he did so at trial.

A review of the record reveals that Appellant’s request for appointed appellate counsel on March 8, 2005 centered on his distrust of state employees.  After the trial judge indicated that he intended to appoint appellate counsel from the State public defender’s office, Appellant replied:

Would it be asking too much that the state would appoint someone from Wichita County?  Because, I mean, 
that’s one of the problems that I had at first with the state counsel for offenders 
being pretty much—the State of Texas being the author of offense, the State of Texas being the investigator of the offense, the State of Texas controlling the case pretty much from beginning to finish. . . . I feel that it is—might create a circumstance to where the representation may not be as sufficient as it would if there was someone outside the boundaries of the state counsel for—office of the state counsel for offenders handling the case. [Emphasis added.]

The trial judge said that he would look into appointing someone local, his main concern being reimbursement in going outside the state system.

A clear reading of the amended order, in its entirety, indicates that the conflict referenced was Appellant’s inability and refusal to work with state-provided defense counsel, necessitating the appointment of an attorney outside of the state system.  Moreover, the use of the conditional verb “would result,” the purpose of the amended order, the appointment of appellate counsel, and the reference to article 26.05 of the code of criminal procedure, which pertains to compensation of counsel appointed to defend, all indicate that the trial judge was in no way referring to trial counsel’s assistance.  
See
 
Tex. Code Crim. Proc. Ann. 
art. 26.05 (Vernon 1989).

Not only did Appellant fail to establish any actual conflict of interest from the amended order’s language, 
see Monreal
, 947 S.W.2d at 565, but the fact that he acted as his own counsel at trial would preclude any other ineffective assistance claims, 
Faretta v. California
, 422 U.S. 806, 834 n.46, 95 S. Ct. 2525, 2541 n.46 (1975); 
Williams v. State
, 549 S.W.2d 183, 189 (Tex. Crim. App. 1977) (stating that when an accused elects to represent himself he cannot complain that the quality of his own defense amounted to a denial of effective assistance of counsel).
(footnote: 5)  We overrule Appellant’s first point.

Motion For Speedy Trial

Appellant was indicted on June 20, 2001 and tried on March 7, 2005. Appellant first raised his speedy trial issue by filing a pro se motion on March 25, 2004.  On May 3, 2004, the State filed a motion for continuance, seeking an additional thirty days, which the trial court granted.  Appellant filed an objection to that continuance on May 12, 2004, and again on July 7, 2004, after the trial court set trial for November 15, 2004.  He raised another motion for speedy trial at the pretrial hearing on March 7, 2005 as part of his motion to quash the indictment.  The trial court denied the motion on March 7, 2005. When reviewing a trial court’s ruling on a speedy trial claim, we review legal issues de novo but give deference to a trial court’s resolution of factual issues.  
Kelly v. State
, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).  We give deference not only to a trial court’s resolution of disputed facts but also to its drawing of reasonable inferences from the facts.  
Id
.  The Sixth Amendment to the United States Constitution guarantees the accused’s right to a speedy trial.  U.S. 
Const. 
amend. VI.  In addition, article I, section ten of the Texas Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public trial.  
Tex. Const. 
art. I, § 10.  If a violation of the speedy trial right is established, the remedy is dismissal of the prosecution.  
Strunk v. United States
, 412 U.S. 434, 440, 93 S. Ct. 2260, 2263 (1973).

In determining whether an accused has been denied his right to a speedy trial, we use a balancing test to weigh the conduct of both the prosecution and the defendant.  
See Barker
 
v. Wingo
, 407 U.S. 514, 530, 92 S. Ct. 2182, 2191-92 (1972); 
Dragoo v. State
, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).  The factors to be weighed include the length of the delay, the reason for the delay, the defendant’s assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay.  
Barker
, 407 U.S. at 530, 92 S. Ct. at 2192; 
Dragoo
, 96 S.W.3d at 313.  No single factor alone is necessary or sufficient to establish a violation of the right to a speedy trial.  
Barker
, 407 U.S. at 533, 92 S. Ct. at 2193; 
Dragoo
, 96 S.W.3d at 313.  Because Appellant lost in the trial court on his speedy trial claim, we must presume that the trial court resolved any disputed fact issues in the State’s favor, and we are required to defer to these implied findings of fact that the record supports.  
State v. Munoz
, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)
. 

We measure the length of the delay from the time Appellant was formally accused.  
See Dragoo
, 96 S.W.3d at 313.  We consider the other three factors only when the delay is long enough to be presumptively prejudicial to the defendant.  
Emery v. State
, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1192 (1995).  In general, delay approaching one year is sufficient to trigger a speedy trial inquiry.  
See Dragoo
, 96 S.W.3d at 314.
  Here, Appellant was indicted on June 20, 2001 and tried on March 7, 2005. Because the delay between indictment and his first motion for a speedy trial was longer than one year, we continue the inquiry.  
See id.

When assessing the second factor, the reason for the delay, we assign different weights to different reasons.  
Barker
, 407 U.S. at 531, 92 S. Ct. at  2192.  A delay attributable to the defendant may constitute a waiver of his right to a speedy trial and, therefore, weighs heavily against him.  
See Munoz
, 991 S.W.2d at 822
.  The State has the initial burden of justifying a lengthy delay.  
Emery
, 881 S.W.2d at 708
.  Here, the State gave no reason for the lengthy delay.
(footnote: 6)  In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. 
 Dragoo
, 96 S.W.3d at 314. 

In its January 4, 2005 order, the trial court found that the trial setting of November 15, 2004 was continued “primarily because [Appellant’s] files pertaining to this case were ‘locked up’ the weekend before trial and [Appellant] was denied access to those files.”  This weighs in Appellant’s favor.  However, Appellant also filed his application for subpoenas on November 15, 2004, and the trial judge observed at trial that one of the reasons that the case was continued from November 2004 until March 2005 was because Appellant sought additional time to subpoena witnesses.  Additionally, he insisted on at least two changes of counsel and then chose to represent himself pro se; any delay caused by these choices is chargeable only to Appellant. 

We next consider Appellant’s assertion of his speedy trial right.  Appellant first raised his speedy trial issue almost three years after his indictment.  This assertion was extremely tardy and weighs heavily against Appellant.  
See Kelly
, 163 S.W.3d at 730 (stating that assertion was tardy when it occurred a year after arrest).  After Appellant asserted this right, the trial court granted the State a continuance and set trial for November 15, 2004, a date almost eight months from Appellant’s motion for a speedy trial.  Appellant objected to the continuance and the late trial setting and raised his objection again at the pretrial hearing on March 7, 2005.  Therefore, though tardy, Appellant did assert his right to a speedy trial.

Finally, we consider the prejudice to the defendant resulting from the delay.  Prejudice should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.  
Barker
, 407 U.S. at 532, 92 S. Ct. at 2193.  There are three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  
Id
. at 532, 92 S. Ct. at 2193.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.  
Id
. at 532, 92 S. Ct. at 2193.

Appellant alleged that the delay caused him harm by preventing him from effectively defending himself and from obtaining parole.  Parole is not on the list of interests the right was designed to protect.  
Id
. at 532, 92 S. Ct. at 2193.  Appellant was incarcerated from indictment through trial on an unrelated charge, effectively negating the concern for pretrial incarceration.  
See id. 
at 532, 92 S. Ct. at 2193.  Because he admitted at trial that he possessed the weapon in prison, his inability to obtain witnesses to testify that he was not the weapon’s 
owner
 did not hamper his ability to adequately prepare his case because ownership of the weapon was irrelevant to the charged offense.  
See
 
Tex. Penal Code Ann
. 46.10.

Appellant also alleged that the State procrastinated to hinder the defense and stall prosecution “in hopes of finding inmate Billy Blackmon, who was released, to testify on behalf of the State of Texas and against [Appellant].”  A valid reason, such as a missing witness, will justify delay and weigh in the State’s favor.  
See Barker
, 407 U.S. at 531, 92 S. Ct. at 2192.  Also, on January 3, 2005, Appellant filed his own application to subpoena Billy Blackmon.

Appellant did not raise his objection until three years had passed and then at least five months were attributable to Appellant’s own delay in issuing subpoenas.  No evidence was presented that the State acted intentionally to cause a delay.  Appellant experienced minimal prejudice because he was already incarcerated.  Deferring to the trial court’s implied findings of fact, we conclude that, on the whole, the balance weighs against Appellant. 
 See Munoz
, 991 S.W.2d at 821, 825.  We overrule Appellant’s second point.

CONCLUSION

Having overruled all of Appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F:  HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 11, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
A person commits the offense of possession of a deadly weapon in a penal institution if, “while confined in a penal institution, he intentionally, knowingly or recklessly possesses or conceals a deadly weapon in the penal institution.”  
Tex. Penal Code Ann
. § 46.10(a)(2) (Vernon 2003).

3:
Appellant’s pretrial 
Faretta
 hearing occurred on October 10, 2003.

4:
At the punishment phase on March 8, 2005, Appellant requested that the trial judge appoint an attorney “for appeal purposes.”

5:
The March 7, 2005 trial was not Appellant’s first pro se trial.  His first foray into pro se representation also ended in conviction.  Although he had received appointed counsel for his appeal in the case before us, in November 2005, Appellant sought once more to represent himself and the case was abated and returned to the trial court to determine whether Appellant should be allowed to do so.  After a hearing, in which the trial court again sternly admonished Appellant of the risks of self-representation, the trial court issued an order on November 30, 2005, finding that Appellant truly desired to represent himself on appeal and that he was competent to make that decision. Appellant filed his pro se brief on July 3, 2006.

6:
The appellate brief submitted by the State addresses only Appellant’s ineffective assistance of counsel claim, not his speedy trial claim.